656 So.2d 42 (1995)
SUCCESSION OF Annie Mae Fuller ANDERSON.
No. 26947-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
Rehearing Denied June 15, 1995.
*43 Iverson, Amman & Wood by Frederic C. Amman, III, Monroe, for appellant.
Blackwell, Chamblis, Henry Harrod, Caldwell & Cagle by Murphy Blackwell, West Monroe, for appellee.
Before HIGHTOWER and BROWN, JJ., and GUIDRY, J. Pro Tem.
HIGHTOWER, Judge.
The primary legatee and executrix under a statutory will appeals from an adverse judgment declaring a subsequently executed olographic testament to be valid, appointing another heir as dative testamentary executor, and assessing court costs against her. We affirm.

Background
After spending three years in a Monroe nursing home, Annie Mae Fuller Anderson, a resident of Ruston, died on February 27, 1994 at the age of 93, leaving an estate valued at approximately one million dollars. She had no descendants but was survived by eleven nieces and nephews and two great-nieces; her husband died some 14 years earlier.
One of the great-nieces, appellant Nancy Wiggers Baggette, and her husband, Wade Baggette, started caring for Anderson in 1983, after they moved back to Louisiana. Under powers of attorney, Wade, an attorney, managed the elderly aunt's financial and legal affairs, while Nancy handled numerous personal matters involving groceries, clothing, utility bills, lawn maintenance, and medical needs. The couple assumed even greater responsibilities as Anderson's health deteriorated.
The day following Anderson's death, Nancy sought to be appointed provisional administratrix. Shortly thereafter, the Baggettes filed a petition to probate a statutory will executed on November 21, 1984. That document, naming Wade as succession attorney and executor, and Nancy as alternate executrix, provided a total of $11,600 for memorials at two universities and for small legacies to certain nieces, nephews, great-nieces, and great-nephews. More importantly, the testament awarded the bulk of the deceased's estate to six named universal legatees: Nancy and Wade; Eloise Fuller Wiggers, a niece who died in 1989; George Edward Wiggers, *44 the father of Nancy and husband of Eloise; and James Egan Fuller and Robert Lane Fuller, two nephews. By order dated March 9, 1994, the court confirmed appellant as executrix, after her husband declined to serve in that capacity.
About two weeks later, several nieces and nephews petitioned the district court to probate an olographic will dated July 22, 1986,[1] revoke the statutory testament, discharge Nancy as executrix, and appoint James Roy Fuller, Jr. as dative testamentary executor. In the subsequently executed document, the testator simply stated:
I Annie Mae Fuller Anderson, revoke all prior wills and give my entire estate to all my nieces and nephews in equal portions and if any my nieces or nephews die before me then his or her share to their descendants.
Soon after the district judge rendered a proces verbal of probate, appellant and her husband filed a pleading to annul the handwritten will on grounds of undue influence, challenging the appointment of Fuller as succession representative, and seeking to reconfirm Nancy to that position.
The trial court addressed the abovementioned petitions at a hearing. With stipulations resolving all other aspects[2], the parties presented evidence concerning only the issues of undue influence and the qualifications of the two applicants for executor. Thereafter, the district judge rejected the Baggettes' contentions, revoked the statutory will in its entirety, and vacated Nancy's appointment as testamentary executrix. The court further confirmed Fuller as dative testamentary executor and assessed all costs to appellant. This appeal ensued.

Discussion

Undue Influence
In her initial assignments of error, Nancy maintains that the trial court erred in rejecting her claim of undue influence and in failing to invalidate the olographic will.
The testimony of several witnesses, including some with no interest in the litigation, reveals that Anderson frequently indicated she wanted her nieces and nephews to share equally in her estate. Moreover, she repeatedly expressed disappointment about the legal contest that had raged among her relatives concerning a statutory will very similar to her own, after her sister, Clara Fuller Tobin, died in 1985.[3] Thus, on July 22, 1986, decedent indicated to her visiting niece, Jo Helen Fuller Green, that she wished to write a new testament.
Green initially advised her aunt to talk to a lawyer about her decision. When Anderson indicated she wished to write the document that day, however, her niece suggested that they call attorney John Lane Sheehan, decedent's great-nephew, and ask how to prepare it. Upon Green telephoning Sheehan, who considered himself a helpful family member, he told his cousin that an olographic will would need to be dated, handwritten, and signed by his aunt. He also recommended that Anderson express her intent to have the estate distributed equally and include words revoking her prior wills, language that he regularly placed in testaments in the course of his practice. That information, Green wrote on a piece of paper and relayed to her aunt, who never spoke with Sheehan.
After obtaining Sheehan's advice, Anderson, a well-educated person with teaching experience at Louisiana State University, immediately drafted the olographic will while her niece sat across the table. Green denied *45 coercing or forcing her aunt to write the testament or dictating it to her. Similarly, she stated that decedent asked her to take the completed document to Sheehan to inspect. Green complied and left the will with the attorney for safe keeping after his review. Subsequently, the deceased never again brought up the subject of her estate.
In brief, appellant suggests that the course of these events, along with the alleged "boilerplate language" of the testament, proves by clear and convincing evidence that Green, Sheehan, and other family members conspired to force Anderson to write the contested document. Relying on her own and her husband's testimony, Nancy maintains that Anderson's true intent had always been to reward the Baggettes for the care they provided. Considering the record before us, however, we cannot agree with that contention.
In his reasons for judgment, the trial judge determined that the opponents of the olographic testament failed to show, either clearly and convincingly or by a preponderance, any evidence of undue influence. He further concluded that the challenged will expressed the deceased's true intent concerning the distribution of her estate.
Under the circumstances at hand, a party challenging a testament on grounds of undue influence must prove the invalidity by clear and convincing evidence. LSA-C.C. Art. 1483; Succession of Hamiter, 519 So.2d 341 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1170 (La.1988).[4] Such issues involve questions of fact, and the trial court's determination will not be disturbed unless clearly wrong. Succession of Hamiter, supra. Even where conflicts appear in the testimony, reasonable credibility evaluations and inferences of fact are not manifestly erroneous. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
Obviously, after Anderson contacted him through his cousin, Sheehan's suggestion that certain language be placed in the testament falls short of undue influence. Mere advice, or persuasion, or kindness and assistance, does not destroy the free agency of the donor and substitute someone else's volition. See LSA-C.C. Art. 1479, Comment (b); Succession of Cole, 618 So.2d 554 (La. App. 4th Cir.1993). Based on the evidence, Sheehan and Green acted only as helpful family members after decedent insisted on drafting a new will. Moreover, as noted by the trial court, the olographic will clearly expressed the deceased's desire, voiced repeatedly, to have her relatives share equally in the estate. On this record, we find no clear error in the trial court decision. Cf., e.g., Succession of Christensen, 94-0263 (La.App. 1st Cir. 12/22/94), 649 So.2d 23; Succession of Cole, supra; Succession of Russo, 596 So.2d 365 (La.App. 4th Cir.1992).

Executor Appointment
In her next assignments of error, Nancy Baggette maintains she is best qualified to serve as testamentary executrix of the estate, and that the trial court thus erred in appointing Fuller. Again, we cannot agree with that proposition.
When appointing a dative testamentary executor, the trial judge shall choose the candidate who is best qualified personally, and by training and experience, to administer the succession. LSA-C.C.P. Art. 3098. In making that selection, the trial judge has wide discretion. Succession of Marino, 234 La. 924, 102 So.2d 218 (1958); Succession of Bates, 227 So.2d 19 (La.App. 2d Cir.1969); Succession of Lofaso, 609 So.2d 856 (La.App. 5th Cir.1992).
Upon reviewing the record, we find no abuse of discretion. While appellant has sufficient education and experience to qualify *46 for the position,[5] the trial judge expressed substantial concern about several problems and conflicts that could affect her ability to act as a prudent administrator. Just one day after being appointed testamentary executrix, Nancy sold almost $60,000 of estate securities and additionally paid various succession debts, all without first obtaining court approval. Even though she explained that these unauthorized actions occurred when "she did not know decedent had made another will" and in a desire to protect the estate from a speculated decline in the stock market, we well understand the lower tribunal's misgivings.
Pointing toward Nancy's plan to retain her husband as attorney for the estate, the trial judge additionally noted "serious questions as to potential conflicts of interest that may arise." The court observed that Wade, as administrator in the succession of another relative, Jo Ann Fuller, conveyed estate property to a corporation wholly owned by him and his wife, before that entity sold some of these assets for "huge profits." Concerning these transactions then, and with Anderson having been an heir in the earlier succession, any potential claim pursued by her estate could implicate Wade.
James Roy Fuller, Jr., a capable and prudent businessman,[6] has two years of college education and prior experience handling his parents' complicated estate. His inaction following appointment as administrator of his grandparent's estate, in 1985, is not greatly significant when compared with the serious conflicts expressed by the trial court in reference to appellant and her husband.
Nor does the district judge's inadvertent reference to evidence outside the record, when stating that Fuller had no knowledge of his appointment as executor of his grandparent's estate, constitute reversible error. The information apparently originated from appellees' memorandum, submitted when the lower court requested each party's "proposed findings of fact." With the record amply supporting the appointment of Fuller as dative testamentary executor, the judgment of the trial judge will not be disturbed in light of the wide discretion afforded in such matters.

Assessment of Court Costs
In her last assignment of error, appellant challenges the lower court's decision to assess costs against her. This contention is unimpressive.
As a general rule, costs incurred in a will contest should be assessed to the mass of the estate rather than against the succession representative individually. Atkins v. Roberts, 561 So.2d 837 (La.App. 2d Cir.1990). An exception from that policy exists, however, where a succession representative has significant personal interest in the outcome of the litigation. Succession of Kelly, 305 So.2d 704 (La.App. 2d Cir.1974); Succession of Bradford, 130 So.2d 702 (La.App. 2d Cir.1961). Considering the substantial inheritance and other benefits that would inure to appellant and persons close to her upon the nullification of decedent's olographic will, we find no error in the trial court's assessment of costs. Further, in all contradictory succession proceedings, costs are to be paid by the defeated party unless the court directs otherwise. LSA-C.C.P. Art. 2825.

Conclusion
For the reasons assigned, the judgment of the district court is affirmed in all respects. Costs are assessed to appellant.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, BROWN and STEWART, JJ., and GUIDRY, J., Pro Tem.
Rehearing denied.
NOTES
[1] James Roy Fuller, Jr., Judith Fuller Najolia, Robert Roy Fuller, Charles C. Fuller, Jo Helen Fuller Greene, Nettie Fay Cooper McCrory, Louise Cooper Fearneyhough, and Annie Belle Cooper are listed as petitioners.
[2] The parties stipulated that both wills had been in the proper form and that no issues of competency would be raised except those related to undue influence. They further agreed that LSA-C.C.P. Art. 3097 disqualified neither applicant for succession representative, and that both fell within the same priority category of LSA-C.C.P. Art. 3098(A)(1).
[3] Testimony revealed that Tobin's testament, like the statutory will involved here, named the Baggettes, together with Nancy's mother and father, as universal legatees. The other nieces and nephews failed in their efforts to challenge that document.
[4] As the clear and convincing standard is applicable to undue influence claims under both present and past law, we decline to address the issue raised in the briefs concerning the retroactivity of the new capacity and undue influence provisions of the Civil Code. See LSA-C.C. Arts. 1479, 1483, as enacted by Acts 1991, No. 363. For conflicting resolutions of similar questions posed by amendments to LSA-C.C. Art. 1482 (Acts 1991, No. 363), see Succession of Duboin, 94-446 (La.App. 3d Cir. 11/02/94), 649 So.2d 617; and Succession of Dowling, 93-1902 (La. App. 4th Cir. 02/25/94), 633 So.2d 846.
[5] Nancy is a registered pharmacist and previously acted as executrix of her mother's estate.
[6] Fuller is the co-owner and manager of five Wendy's hamburger franchises in the Monroe and Ruston areas. He also has experience in the construction field and with apartment rentals.