| MAMES F. McKAY III, Judge.
The appellants, Sandra Tanner, Orey Tanner, Jr., and Joan Martin, appeal the judgment of the trial court dismissing their petition to nullify testamentary bequest with prejudice and granting appel-lee’s, Jerald N. Andry, motion for summary judgment.
FACTS AND PROCEDURAL HISTORY
Clifford Chester Tanner died testate on April 25, 2001; his last will and testament was dated April 12, 2001. His wife, Elise Joynes Tanner, pre-deceased him and died intestate. There were no children born of their marriage. In Mr. Tanner’s last will and testament he bequeathed the following: His furniture and personal belongings to the Volunteers of America; an undivided one-half (1/2) interest in his estate, free of all taxes and administrative charges, to Jerald N. Andry; one-eighth (1/8) interest in his estate, free and clear of all taxes and charges, to Sandra Tanner and Orey Tanner, Jr.; one-eighth (1/8) interest to the Theodore Roosevelt Lodge, # 415, Free and Accepted Masons; one-eighth (1/8) of liJiis estate to the Eneircler Chapter, # 191, Order of Eastern Star; and the remaining one-eighth (1/8) of his estate to Mrs. Joan Martin.
On May 17, 2001, a succession proceeding was filed. The last will and testament of Clifford Chester Tanner was probated and letters’ testamentary were issued to Jerald N. Andry as executor of the succession. On August 9, 2001, the appellants, the only living relatives of the decedent, who are also particular legatees under Clifford Tanner’s will, filed a petition to nullify testamentary bequest. On November 2, 2001, the appellants amended their petition allegations to state that Jerald N. Andry violated the Louisiana Bar Association Rules of Professional Conduct, Rule 1.8(c), by preparing a testament for a non-relative in which he received a substantial *1282 gift. On April 9, 2002, Jerald N. Andry filed a motion for summary judgment requesting that appellants’ petition be dismissed with prejudice. The matter was heard on May 24, 2002. On June 11, 2002, the trial court signed the judgment granting the appellee’s motion for summary judgment and dismissed the appellants’ petition to nullify testamentary bequest.
The bequest to Jerald N. Andry is the prominent issue of dispute in this appeal with the appellants asserting an undue influence claim against Jerald Andry and a violation of the Louisiana Bar Association Rules of Professional Conduct, Rule 1.8(c).
STANDARD OF REVIEW
Appellate courts review summary judgments de novo. Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). Regardless of whether or not summary judgments are favored, the amended version of C.C.P. art. 966 does not change the law regarding the burden of proof in a summary judgment | ^proceeding. Moore v. Delta Waste System, Inc., 96-1984 (La.App. 4 Cir. 3/12/97), 690 So.2d 1108, 1109. The burden of proof remains on the mover to show “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” Id. at 1110. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any issue of material fact, and whether the mover is entitled to judgment as a matter of law. Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4 Cir. 9/11/96), 681 So.2d 19, 20. Procedurally, the court’s first task on a motion for summary judgment is determining whether the moving party’s supporting documents, pleadings, deposition, answers to interrogatories, admissions and affidavits, are sufficient to resolve all material factual issues. Id. At that point, the party opposing the motion must “make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.” Oakley v. Thebault, XYZ, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. In determining whether an issue is “genuine”, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Daniel, 681 So.2d at 20.
DISCUSSION
Appellants assert that the trial court erred in granting the defendant’s motion for summary judgment arguing that they have satisfied the evidentiary burden of proof required under the provisions of La. C.C. Pro. art. 966 C(2) to prove that there is a genuine issue of material fact with respect to both undue influence and | violation of Rule 1.8(c) of the Louisiana State Bar Association Rules of Professional Conduct.[1]
Appellants contend that Jerald Andry unduly influenced Clifford Tanner into changing his last will and testament to include Jerald Andry as the beneficiary of a one-half (1/2) interest in his estate, a bequest valued in excess of $500,000.00. The appellants claim that Jerald Andry was not related to the decedent nor was *1283 there a significant personal relationship between them, thereby casting aspersions upon Jerald Andry’s alleged actions concerning the redrafting of Clifford Tanner’s last will and testament. The appellee refutes these allegations and asserts that he indeed had a good relationship with the decedent that spanned a number of years. He also asserts that he attempted to dissuade Clifford Tanner from naming him a beneficiary. The alleged purpose for the change from the 1997 testament was at the behest of Clifford Tanner because a particular legatee, Clifford Prendergast his friend, had predeceased him.[2] Appellee also asserts that he did not draft the final testament of Clifford Tanner but that it was prepared and notarized by attorney, Morris Hyman, and independently witnessed by Gilbert Andry and Newell An-dry.
Clifford Tanner was admitted to the hospital on April 9, 2001, apparently due to complications from terminal cancer. The decedent signed the last will and testament at issue in this appeal on April 12, 2001.[3] Clifford Tanner was transferred and admitted to Canon Health Care, a hospice, on April 14, 2001, and died on April 25, 2001 at the age of 93.
| RArticle 1479 of the Louisiana Civil Code provides for the nullification of a donation that is procured through undue influence. It provides:
A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.
Furthermore, Comment (b) to Article 1479 provides, in part:
[Ejveryone is more or less swayed by associations with other persons, so this Article attempts to describe the kind of influence that would cause the invalidity of a gift or disposition. Physical coercion and duress clearly fall within the proscription of the previous Article. The more subtle influences, such as creating resentment toward a natural object of a testator’s bounty by false statements, may constitute the kind of influence that is reprobated by this Article, but will still call for evaluation by the trier of fact. Since the ways of influencing another person are infinite, the definition given in this Article is used in an attempt to place a limit on the kind of influence that is deemed offensive. Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of a donor and substitute someone else’s volition for his own.
La.Civ.Code art. 1483 states:
A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.
When seeking to annul a donation on the basis of undue influence, this Court has held that it is not sufficient to merely show that the donee exercised some degree of influence over a donor; *1284 instead, the challenger must show that the donee’s influence was so substantial that the donnee substituted his or her volition for that of the donor. Succession of Cole, 618 So.2d 554, 558 (La.App. 4 Cir.1993). To annul a testamentary disposition on the basis of undue influence, the influence must be operative at the time the testament is executed. Succession of Deshotels, 98-1467 (La.App. 4 Cir. 5/12/99), 735 So.2d 826, 832. Undue influence may not be established by evidence of mere advice, or persuasion, or kindness and assistance. Succession of Cole, 618 So.2d at 558. Such advise, persuasion and assistance ‘does not destroy free agency of the donor and substitute someone else’s volition.’ Succession of Anderson, 26,947 (La.App. 2 Cir. 5/10/95), 656 So.2d 42, 45. When the evidence shows that the execution of a testament was well-within the discretion of the testator, the court should find that the testator’s volition has not been substituted by the volition of any donee. See Succession of Cole, at 558.
In this case, because Jerald Andry was the decedent’s attorney, and not related to the decedent by blood, the appellants had to prove undue influence by a preponderance of the evidence rather than the more strenuous burden of clear and convincing evidence. See Succession of Braud, 646 So.2d 1168.
The law of undue influence is “relatively new in Louisiana”. Prior to 1990, the code prohibited the admission of proof that a disposition had been made “through hatred, anger, suggestion or capitation.” La. C.C. art. 1492 (repealed). In light of this nearly insurmountable burden, courts considered evidence of influence only when it affected, or virtually destroyed, the mental capacity of the testator. See, e.g., Succession of Hamiter, 519 So.2d 341 (La.App. 2 Cir.1988). In 1989, however, the legislature repealed art. 1492, and in 1991 enacted art. 1479, which specifically allows evidence of undue influence to nullify a will. This change in the law shows a legislative intent to follow the guidance of common law | .¡.jurisprudence on undue influence. Succession of Dowling, 633 So.2d 846 (La.App. 4 Cir.1994); La. C.C. art. 1479, Revision Comment (b).
Appellants base this assertion on the lack of any blood relationship between Clifford Tanner and Jerald Andry; the bequest to Jerald Andry could only have occurred because of undue influence asserted on their uncle by Jerald Andry; and the fact that their uncle was a spendthrift and on his deep emotional ties to various Masonic organizations, There is no support for the appellants’ assertion that Jerald Andry influenced Clifford Tanner is such a way to replace his volition for that of Clifford Tanner. Appellants’ evidence indicates only that the appellants believe that Clifford Tanner’s will was in fact drawn up and executed by Jerald Andry and the execution thereof was witnessed only by Gilbert Andry, Jerald’s Andry brother and his wife Newell.
Jerald Andry testified that attorney Morris Hyman prepared and notarized Clifford Tanner’s last will and testament at Clifford Tanner’s behest. He also admits that it is a virtual duplication of the 1997 testament, which had been prepared by Clifford Tanner’s friend and then attorney, Fred Siegel, with a few major changes as to the particularized bequests. Furthermore, Jerald Andry was the named executor in the 1997 testament as well as the 2001 testament.
Morris Hymen testified that he drafted the testament using the 1997 will as a guide. He further testified that he read the proposed testament to Clifford Tanner in front of two witnesses and that Clifford Tanner indicated that the document reflected his own wishes and was in fact his last will and testament.
*1285 Appellants’ beliefs are clearly based on pure conjecture, not evidence and fall short of the factual support needed to establish that the appellants would be able to satisfy their evidentiary burden at trial. The evidence presented does not | ^support the appellants’ assertion of undue influence. They express no first hand knowledge of the occurrences nor do they establish any specific instances that can be linked to the allegations of undue influence.
Clifford Tanner’s bequest to Jerald An-dry is not invalid merely because Jerald Andry may have conducted transactions on Clifford Tanner’s behalf nor merely because the 2001 testament differs from the 1997 testament. See Succession of Braud, 646 So.2d at 1172-73. Furthermore, no proof whatsoever has been offered to suggest that Clifford Tanner’s “free agency was destroyed” and that Jerald Andry’s “volition” was substituted for that of his own. See Succession of Anderson, 656 So.2d 42, 45. Finally, pure speculation is insufficient factual support. Shelton v. Standard/700 Associates, 2001-0587 (La.10/16/01), 798 So.2d 60, 65. Appellants need to prove by a preponderance of the evidence that Jerald Andry unduly influenced Clifford Tanner such that the testamentary bequest ought be annulled. La. C.C. art. 1483. Albeit Jerald Andry was Clifford Tanner’s attorney, appellant retained the burden of proving by a preponderance of the evidence that Jerald Andry unduly influenced Clifford Tanner. After a review of the record before this Court, we do not find that the decedent’s donative intent was impaired to the extent that the volition of Jerald Andry was substituted for that of Clifford Tanner. Appellants have failed to meet the prescribed standard and have failed to provide supporting documentation sufficient to resolve all material issues. Accordingly, we find no error in the trial court’s judgment finding that there was no undue influence on the part of Jerald Andry and in granting his motion for summary judgment.
As for the alleged violation of Louisiana Bar Association Rules of Professional Conduct Rule 1.8(c), the evidence clearly shows that Morris Hyman 13was the attorney that prepared and notarized the April 12, 2001 last will and testament of Clifford Tanner. The original method of distribution was clearly established in the 1997 testament, which Fred Siegel prepared as Clifford Tanner’s attorney.[4] Jerald Andry prepared neither of the testaments albeit he was named executor in both. The fact that he was Clifford Tanner’s attorney and that he contacted Morris Hyman to prepare the new testament for Clifford Tanner is not determinative that Jerald Andry prepared or assisted in the preparation of the testament. Innuendo is neither evidence nor fact but merely unsupported speculation. The record has testimony from both Jerald Andry and Morris Hy-man that clarify that it was Morris Hyman who prepared and notarized Clifford Tanner’s last will testament. Clearly, there is no violation of Rule 1.8(c).
The record supports the trial court’s judgment. Therefore, for the above and foregoing reasons we affirm the trial court.
AFFIRMED.

. Rule 1.8. Conflict of interest; Prohibited transactions. As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating to the representation of the client's disadvantage. Examples of violations include, but are not limited to, the following. § c. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.

. Mr. Prendergast had been bequeathed firearms in the 1997 testament.

. There was a prior testament in 1997, which was prepared by Mr. Tanner's attorney and friend Mr. Fred Siegel. Mr. Andry had, at that time, shared office space with Mr. Siegel.

. Fred Siegel retired sometime after he prepared the 1997 testament and moved to Texas. At that point it appears that Jerald Andry became Clifford Tanner's attorney.