850 So.2d 733 (2003)
In re SUCCESSION OF Yvonne G. GILBERT.
No. 37,047-CA.
Court of Appeal of Louisiana, Second Circuit.
June 5, 2003.
*734 Robert A. Robertson, for Appellant, Darlynn G. Ware.
Don C. Burns, for Appellee, Succession of Yvonne G. Gilbert.
Mary Alice Bryant, Monroe, for Appellee, Hobart William "Woody" Woodruff, Mary Woodruff, Corina Inbeault & William Ray Woodruff.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, J.
Darlynn G. Ware, petitioner and daughter of the decedent, Yvonne G. Gilbert, appeals a trial court judgment in favor of defendants, Estate of Yvonne Gilbert and Estate of Hobart Woodruff, dismissing her petition to disqualify the executor and nullify her mother's last will and testament. For the following reasons, we affirm.

FACTS
The decedent, Yvonne G. Gilbert, died on October 12, 2000. She was survived by three adult children: Darlynn Gilbert Ware, Steven George Gilbert, and Clas Lafatte Gilbert, Jr. The decedent executed the last will and testament on June 16, 2000. The will named Hobart Williams "Woody" Woodruff as executor of decedent's estate. Woody, a friend, caretaker and companion of decedent, was bequeathed her house, personal property and all of her mineral and royalty interests. The three adult children were bequeathed the remainder of the estate. The two sons also received an automobile for their shared use.
Woody was decedent's caretaker during the last days of her life. There is no blood relationship between the decedent and Woody, but they were close friends and confidants. Decedent and Woody lived in Columbia, Louisiana and her children resided out-of-state. Darlynn resided in Houston, Texas. Steve and Clas resided in Lexington, Kentucky.
In June 2000, the decedent was diagnosed with several medical conditions, including atrial fibrillation, aortic valvular disorder, congestive heart failure, hypertension, osteoarthrosis and osteoporosis. Because of the decedent's illnesses and her refusal to have surgery, her health began to slowly deteriorate. Thereafter, Woody began to take more responsibility for the care and assistance of decedent. On June 12, 2000, the decedent gave Woody power of attorney to make medical and financial decisions on her behalf. The power of attorney was executed by decedent in the presence of her attorney, Don C. Burns.
Darlynn sought to annul the will and disqualify Woody as the executor, alleging that he unduly influenced her mother at the time of the execution of the will. Subsequently, Woody died and Carl Duke, his nephew, was appointed executor of the decedent's estate. A petition to intervene was later filed and Mary Woodruff, the executrix of Woody's estate, was substituted as a party defendant.
Darlynn contended that at the time her mother executed the power of attorney and the will, she was subjected to undue influence from Woody. Darlynn made the following allegations in support of her claim: (1) Woody lived with decedent for a period of time and had unfettered access to her home and this association affected the drafting of her will; (2) Woody had such undue influence over her mother that he convinced her to change her prescribed *735 dosage of medication and to refuse medical treatment recommended by her physician; (3) Woody convinced decedent that her family did not care for her and that he was the only person keeping her out of a nursing home; and (4) Woody's influence had advanced to such a degree that decedent could not speak with her children without Woody listening to the conversation on an adjoining line or on a speaker phone.
At the close of the plaintiff's case, the trial court granted the defendant's motion for directed verdict and dismissed the petitioner's claim. The trial court found that the plaintiff failed to present any evidence to show that the testator was subject to undue influence in executing the will. Darlynn appeals this adverse ruling.

DISCUSSION
Darlynn contends the trial court erred in dismissing her petition. She argues the court abused its discretion when it held that the only evidence admissible in a case involving "undue influence" is the relevant actions and/or inactions which took place the day before and the day after the decedent signed the will.
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. LSA-C.C.P. art. 1672 B; Dampeer v. Dampeer, 96-0708 (La.5/3/96), 672 So.2d 176. The trial judge is required to evaluate the evidence and render a decision in accord with the applicable burden of proof. Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418, and authorities cited therein.
Prior to 1990, our Civil Code prohibited the admission of proof that a disposition had been made "through hatred, anger, suggestion or captation." LSA-C.C. art. 1492 (repealed). In light of this nearly insurmountable burden, courts considered evidence of influence only when it affected, or virtually destroyed, the mental capacity of the testator. Succession of Hamiter, 519 So.2d 341 (La.App. 2d Cir.1988). In 1989, however, the legislature repealed Article 1492, and in 1991 enacted LSA-C.C. art. 1479, which specifically allows evidence of undue influence to nullify a will.
Under Article 1479, a donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor. The accompanying Revision Comment explains that "mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of the donor and substitute someone else's volition for his own." See, Succession of Braud, 94-0668 (La.App. 4th Cir.11/17/94), 646 So.2d 1168, writ denied, 95-0383 (La.3/10/95), 651 So.2d 841.
LSA-C.C. art. 1483 provides:
A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.
The trial court's finding of, or failure to find, undue influence is fact intensive, *736 and such a finding cannot be disturbed on appeal in the absence of manifest error. Succession of Anderson, 26,947 (La.App.2d Cir.5/10/95), 656 So.2d 42, writ denied, 95-1789 (La.10/27/95), 662 So.2d 3. Reversal is warranted only if the appellate court finds that no reasonable factual basis for the trial court's finding exists in the record, and that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
When seeking to annul a donation on the basis of undue influence, it is not sufficient to merely show that the donee exercised some degree of influence over a donor; instead, the challenger must show that the donee's influence was so substantial that the donee substituted his or her volition for that of the donor. Succession of Anderson, supra; Succession of Cole, 618 So.2d 554 (La.App. 4th Cir.1993). To annul a testamentary disposition on the basis of undue influence, the influence must be operative at the time the testament is executed. Succession of Deshotels, 98-1467 (La.App. 4th Cir.5/12/99), 735 So.2d 826. When the evidence shows that the execution of a testament was well within the discretion of the testator, the court should find that the testator's volition has not been substituted by the volition of any donee. Succession of Cole, supra.
In the instant case, both sides presented the testimony of several witnesses. Dr. Salmon Shafiq, the decedent's treating physician, testified that decedent did not have any cognitive deficits. He felt that the decedent understood the extent of her diseases and condition and she comprehended the medical information he had given her. Dr. Shafiq explained that he discussed the option of surgery with decedent and she, on her own accord without Woody's involvement, refused to have the operation. Initially, petitioner alleged that Woody was trying to incapacitate or harm her mother by administering improper dosages of prescribed medicines to decedent. Dr. Shafiq, through his testimony, refuted this allegation by explaining that his records showed only one occasion when Woody diverted from decedent's regular medication dosage and used a "home" or "book" remedy in an attempt to help alleviate some of her pain.
Steve Gilbert, the decedent's son, testified that he telephoned his mother frequently and constantly asked her to come and live with him. He stated that she would always refuse the offer and would give him an excuse regarding her decision. Steve's testimony indicates that the decedent understood his offer, but she wanted to stay in Columbia, Louisiana with Woody.
Peggy Moore, decedent's home health nurse, saw the decedent in her home on June 12, 2000, four days before the execution of the will and the day the power of attorney was signed. Moore testified that decedent was a very "with it" lady. She explained that decedent had heart problems and was a very sick woman. Moore's medical notes indicated that on June 12, 2000, the decedent was a little confused, disoriented and weak. She testified that although she visited the home of decedent on a regular basis, she did not observe any isolation, alleged captivity or undue influence.
Louise Rushing, decedent's hair-stylist, testified that prior to her death, the decedent's feet were swollen and it was difficult for her to move around. According to Rushing, the decedent still looked "radiant" and carried herself "graciously." Rushing's testimony did not support petitioner's allegations that Woody controlled or manipulated decedent in any way. The only information Rushing provided with regard to Woody was that he would drive *737 decedent to the hair salon and pick her up when she was ready to leave.
Bobby Ray Parker, Sr., a friend of the decedent for over 30 years, described events that occurred after her death. Parker testified that Woody told him that his assistance was the only reason decedent was never placed in a nursing home. According to Parker, Woody informed Parker that the decedent had left everything to Woody and decedent's children were not going to take anything away from him, including the house.
The petitioner, Parker and Phyllis Woods, the former daughter-in-law of decedent, were the only witnesses to present testimony in an attempt to prove the undue influence exerted by Woody over the decedent. They testified that Woody exercised control and power over the decedent. Petitioner and Woods also testified that Woody monitored and supervised all of the decedent's telephone calls. They testified decedent was afraid of Woody. According to these witnesses, Woody influenced and threatened the decedent by regularly informing her that her family did not love her and he was the only person keeping her out of a nursing home.
Attorney Don Burns testified that he prepared the decedent's will. He testified that at the time the decedent executed the will she did not lack the capacity to sign. Burns was not asked any other questions with regard to the decedent's behavior or her physical and mental condition which would establish the voluntariness of her actions at the time she executed the will.
Because Woody and the decedent had established a relationship of confidence and were not related by affinity, consanguinity or adoption, the petitioner was required to prove undue influence by a preponderance of the evidence. LSA-C.C. art. 1483. The evidence presented does not support the petitioner's assertion of undue influence. The witnesses did not express first-hand knowledge of the events which occurred at the time the decedent executed the will. Moreover, the petitioner did not present any specific evidence to prove the allegations of undue influence. The decedent's bequest to Woody is not invalid merely because Woody may have at some time made negative statements about decedent's family. See LSA-C.C. art. 1479 Comment (d). Furthermore, the testimony did not demonstrate that decedent's "free agency was destroyed" and that Woody's "volition" was substituted for that of her own. See Succession of Anderson, supra.
After a thorough review of this record, we conclude that petitioner failed to meet her burden of proving that the decedent's donative intent was impaired to the extent that Woody's volition was substituted for that of the decedent. Additionally, because the undue influence must be operative at the time the will was executed, we cannot say that the trial court abused its discretion in limiting the testimony to facts and events directly surrounding the time of the execution of the will. The trial court was not clearly wrong in finding that the plaintiff failed to prove by a preponderance of the evidence that Woody exerted undue influence over the decedent. Thus, the trial court did not err in granting the defendants' motion to dismiss. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the petitioner, Darlynn Ware.
AFFIRMED.