JjMAX N. TOBIAS, JR., Judge.
The defendant, Doris M. Wheat (“Ms. Wheat”), appeals from a judgment entered against her on 4 September 2002.[1] For the reasons set forth below, we affirm the judgment.
The plaintiff, Frederick C. Kraus, Jr., filed the instant action on 16 May 2000, seeking to invalidate an inter vivos donation by him of immovable property located at 2112 Farmsite Road, Violet, Louisiana, to Ms. Wheat on 6 October 1997. Mr. Kraus contended that the donation was procured by fraud and undue influence and was null pursuant to La. C.C. arts. 1478, 1479, and 1498. In addition, Mr. Kraus sought the return of over $16,000.00 from Ms. Wheat, which Mr. Kraus contended was a loan; Ms. Wheat claimed that the money was a donation and, therefore, irrevocable.
DThe case was tried to the trial court on 3 June 2002. On 4 September 2002, the court rendered judgment in favor of the plaintiff, stating in its reasons for judgment:
Mr. Kraus was a vulnerable, elderly man who had recently lost his wife of forty-three years. Although neighbors, Mrs. Wheat did not become close to plaintiff until his wife became ill. After Mrs. Kraus’ death, Mrs. Wheat took an active role in Mr. Kraus’ affairs, i.e., advising him on different matters and facilitating the opening of Mrs. Kraus’ succession. This Court was convinced by the testimony that Mr. Kraus trusted Mrs. Wheat and was misled and unduly influenced by her assertions that the document he was signing was necessary in order to give her authority to take care of his needs. In spite of the fact that the act was made in writing and before a notary, Mr. Kraus carried his burden of proof pursuant to civil code articles 1479 and 1483 to nullify the donation based on duress and the undue influence exerted by defendant.
[[Image here]]
This Court was also convinced by the testimony at trial that the $16,415.57 which plaintiff gave Mrs. Wheat in July of 1997, represented a loan, not a dona *48 tion. Although this transaction was not documented in writing, Mr. Kraus did keep records showing (5) payments made by Mrs. Wheat totaling $550.00. These payments represent evidence that Mrs. Wheat was attempting to repay the funds and acknowledging the transaction as a loan.
Ms. Wheat assigns four errors for review. First, she argues that the trial court erred in finding that the donation of immovable property was procured by undue influence; second, that the court erred in finding that the money given to her by Mr. Kraus was a loan and not a donation; third, that the trial court erred in awarding interest from date of judicial demand; and finally, that the trial court erred in not crediting the virile share of Searcy Wheat. However, before considering the assignments of error, we address the peremptory exception of prescription filed by Mr. Wheat in this court. See La. C.C.P. art. 2163.
In addition to finding that Mr. Kraus carried his burden of proof pursuant to La. C.C. arts. 1479 and 1483, the trial court also held that Mr. Kraus could and did l.qinvalidate the donation of immovable property by a showing of ingratitude by the donee, Ms. Wheat.[2] See La. C.C. arts. 1559(1), which provides that a donation inter vivos may be invalidated based on the “ingratitude of the donee,” and La. C.C. art. 1560(2), which states that the ingratitude can take of the form of “cruel treatment” by the donee towards the donor. Ms. Wheat contends that because an action for revocation for cause of ingratitude must be brought within one year from the date of the act of ingratitude, the instant matter is prescribed and must be dismissed.
In opposing the exception, Mr. Kraus points out that the trial court also found that he had carried his burden of proof under La. C.C. arts. 1479 and 1483 and that he never invoked article 1560 as a cause of action. Thus, the action was timely filed.
We agree with Mr. Kraus. A review of the petition reveals that Mr. Kraus filed the instant lawsuit pursuant to La. C.C. arts. 1478, 1479, and 1498. Actions to reduce excessive donations are subject to a five-year prescriptive period. La. C.C. art. 3497. Thus the petition was timely filed. The fact that the trial court also found a cause of action for ingratitude is of no moment, as it also found that Mr. Kraus had carried his burden of proof pursuant to the codal articles under which he filed suit. Therefore, Ms. Wheat’s exception of prescription is overruled.
Ms. Wheat argues that the weight of the testimony compels a finding that Mr. Kraus knew that he was donating his immovable property to her and that she did not mislead or unduly influence him. Ms. Wheat argues that only Mr. Kraus’ self-serving testimony supports that trial court’s judgment. We review the trial 14 court’s factual findings pursuant to the clearly wrong/ manifestly erroneous standard.
Article 1479 of the Louisiana Civil Code provides for the nullification of a donation that is procured through undue influence:
A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to *49 substitute the volition of the donee or other person for the volition of the donor.
Furthermore, Comment (b) to article 1479 provides in pertinent part:
[E] very one is more or less swayed by associations with other persons, so this Article attempts to describe the kind of influence that would cause the invalidity of a gift or disposition. Physical coercion and duress clearly fall within the proscription of the previous Article. The more subtle influences, such as creating resentment toward a natural object of a testator’s bounty by false statements, may constitute the kind of influence that is reprobated by this Article, but will still call for evaluation by the trier of fact. Since the ways of influencing another person are infinite, the definition given in this Article is used in an attempt to place a limit on the kind of influence that is deemed offensive. Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of a donor and substitute someone else’s volition for his own. La. C.C. art. 1483 states:
A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.
|BWhen seeking to annul a donation on the basis of undue influence, this court has held that it is not sufficient to merely show that the donee exercised some degree of influence over a donor; instead, the challenger must show that the donee’s influence was so substantial that the donee substituted his or her volition for that of the donor. Succession of Tanner, 2002-1570 (La.App. 4 Cir. 2/5/03), 836 So.2d 1280. Because Ms. Wheat was Mr. Kraus’ neighbor, and not related to him by blood, Mr. Kraus had to prove undue influence by a preponderance of the evidence, rather than the more strenuous burden of clear and convincing evidence. See La. C.C. art. 1483.
Mr. Kraus testified that his wife died suddenly after over 38 years of marriage; he was then 75 years old and devastated, requiring a prescription of anti-depressants. They were not able to have children and lived alone. Mr. Kraus stated that his wife did everything for him and their home; all he had to do was work and bring home his check. The Krauses and the Wheats had been neighbors for about 30 years, but not too friendly because his wife did not get along with Ms. Wheat. After his wife’s death, Ms. Wheat began to help him around the house.
Mr. Kraus did not plan on immediately opening his late wife’s succession. However, Ms. WTieat said that it was better for him to take care of it immediately. Ms. Wheat took him to see a lawyer, Mark Bonura, who handled the matter. The succession of Mr. Kraus’ late wife was filed on 10 September 1997.
On 6 October 1997, Ms. Wheat phoned Mr. Kraus and informed him that they were going to Betty Marchand’s office to sign some papers. Mr. Kraus had never met Ms. Marchand, but was told that she was Ms. Wheat’s notary public. Ms. Wheat told him that they were going over there “to sign some papers, me thinking that it was taking care of me as she promised my wife she would send Rover meals *50 and do stuff like that.” He believed this to be the case, because Ms. Wheat had previously cared for elderly people at different times in her home until they died.
Upon arriving at a used car lot where Ms. Marehand conducted her notary business, Mr. Kraus was told to sign what he believed was a medical power of attorney. He did not read the document and its contents were not discussed and/or explained to him. He testified that neither of the attesting witnesses was present when he signed the paper.
Sometime in 1999, Mr. Kraus received his homestead exemption and for the first time saw evidence of Ms. Wheat’s ownership in his home. He investigated further and discovered that what he had signed was not a medical power of attorney, but a donation of the home in which he had lived since 1972. When he confronted Ms. Wheat, she threatened to put him out of the house.
This account was supported by the testimony of Anna Franson, who had been in a long-term relationship with Mr. Kraus’ son. She confirmed Mr. Kraus’ depressed emotional state following the death of his wife. During their many telephone conversations, he told Ms. Franson that a lady next door had promised to take care of him and that Ms. Franson did not have to worry about him being alone. In that conversation, Mr. Kraus stated that he signed some papers so that could occur.
While visiting Mr. Kraus in March 1998, Ms. Franson finally learned the true nature of the papers signed by him. She overheard an argument between Mr. Kraus and Ms. Wheat, wherein Ms. Wheat stated: “If you keep this up, I’m going to throw you out of the house.” Ms. Franson told Mr. Kraus about what she had 17heard and he reluctantly told about the unintended donation. He was upset and ashamed that he had allowed this to occur.
Ms. Wheat testified that Mr. Kraus offered to donate his home to her on numerous occasions because he did not want his heirs to receive the house after his death. Finally, after attempting to dissuade him, she agreed. However, before the donation could take place, Mr. Kraus had to open his wife’s succession so that he could be put in possession of the house. Ms. Wheat’s notary public, Betty Marehand, referred Mr. Kraus to a lawyer, Mark Bonura, to handle the succession.
Mr. Bonura testified that Mr. Kraus stated that he wanted to put the house in Ms. Wheat’s name so she could leave it to her grandchildren. Mr. Bonura also testified that Mr. Kraus knew what he was doing and was not overcome with grief.
After the succession was completed, Mr. Kraus and Ms. Wheat went to Ms. Mar-chand to sign the donation document. Ms. Marehand testified that before the donation was executed, she determined that Mr. Kraus knew what he was doing and wanted to donate the property to Ms. Wheat. Ms. Wheat’s daughter, Alicia Treadaway, was also present at the signing of the act of donation, and testified that Mr. Kraus clearly stated that he wanted to donate the property to Ms. Wheat.
“It is the task of the trial judge to determine the credibility of the witnesses and this determination will not be disturbed absent manifest error.” Sevier v. United States Fid. & Guar. Co., 497 So.2d 1380, 1382-83 (La.1986) (quoting Boustany v. Fluid Dynamics, Inc., 392 So.2d 750, 751 (La.App. 3 Cir.1980)). As the Supreme Court explained in Stobart v. State of Louisiana, Dep’t of Transp. and Dev., 617 So.2d 880, 883 (La.1993), “where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.”
*51 | «In the instant matter, the trial court heard conflicting testimony and made a decision based on its consideration of all the evidence presented. Obviously, the trial court found Mr. Kraus and Ms. Franson to be more credible than Ms. Wheat and her witnesses. We do not second-guess the trial court’s credibility determinations and set aside findings of fact that are not clearly wrong based on the evidence that is in the record. This assignment of error has no merit.
The second assignment of error concerns the trial court’s determination that money totaling $16,514.57 was a loan from Mr. Kraus to Ms. Wheat and not a gift. The basis of this decision by the trial court was the testimony of Mr. Kraus and the fact that Mr. Kraus kept records showing five payments by Ms. Wheat totaling $550.00.
Mr. Kraus testified that Ms. Wheat came to him in July 1997, begging him for a loan because her credit card was at its limit and her creditor was threatening to seize her home. In order to arrive at a figure, he and Ms. Wheat’s daughter went over the outstanding bills. The loan was given in two amounts, a check for $14,347.57 drawn on Mr. Kraus’ bank and $2,068.00 in cash. Ms. Wheat told him that she would pay off the loan by paying $100.00 per month, but ultimately she only repaid $550.00. One condition of the loan was that they would not tell Ms. Wheat’s husband about the transaction.[3]
When Ms. Wheat approached Mr. Kraus in 1998 for a second loan of $6,000.00, he turned her down because she was not paying him back for the first loan as she promised. On another occasion, she tried to exchange sex for Mr. Kraus’ certificates of deposits; Ms. Wheat said that she would give the interest |flaccruing on the certificates to Mr. Kraus every month. However, Mr. Kraus refused the offer.
Both Ms. Wheat and her daughter testified that the money was not a loan, but a gift. Ms. Wheat testified that he gave her the money because he wanted to help out her family. It was not until much later that he raised the issue of repayment. Ms. Wheat testified that when she would go to the casino and win money, she would often give it to Mr. Kraus. These amounts were to give something back to him and not repayments as Mr. Kraus testified.
The trial court ruled in Mr. Kraus’ favor on this issue, again choosing to believe him over Ms. Wheat and her daughter. In light of the evidence in the record, this decision is not clearly wrong or manifestly erroneous. Consequently, this assignment of error is without merit.
Next, Ms. Wheat contends that the trial court erred by awarding interest from the date of judicial demand, rather than from the date of judgment. On the other hand, Mr. Kraus argues that interest should have begun on the date that the loan was due, which was well in advance of the date of judicial demand. For the following reasons, we find no error by the trial court.
As recognized by the Second Circuit in Mini Togs Products, Inc. v. Wallace, 513 So.2d 867, 873 (La.App. 2 Cir.), writs denied, 515 So.2d 447 (La.1987), 515 So.2d 451 (La.1987):
Although the issue as presented to us in this case is whether legal interest should run from date of judicial demand or from date of judgment, neither of those dates are specifically mentioned in the codal articles providing for legal interest on debts or claims arising out of contracts. Cases involving disputes *52 over the time of commencement of legal interest have often been resolved by reference to the time the debt was due, or when the obligor was put in default, or when the claim became |10liquidated or ascertainable. Often the dispute has been whether legal interest commenced to accrue upon judicial demand or at an earlier date.
We also note that in Alexander v. Burroughs Corp., 359 So.2d 607, 613 (La.1978), the Supreme Court stated:
One of the incidents of the obligations of contracts is that the one who violates those obligations is liable for damages “which the other party has sustained by his default.” C.C.1930 [now art.1994]. Damages are due “from the moment” of an active violation of a contract (C.C. 1932 [now art.2015]) and from “the time that the debtor has been put in default” when the breach has been passive. C.C. 1933 [now art.1989], A debtor may be put in default “either by the commencement of a suit, by a demand in writing ...." or in other ways. C.C.1911 [now art.1991]. The damages due for delay in the performance of an obligation to pay money are called interest. “C.C.1935 [now art.2000]. “All debts shall bear interest at the rate of seven per centum per annum from the time they became due, unless otherwise stipulated.” C.C. 1938 [now arts.2000, 2924],
This means that claims arising from a contract bear judicial interest from the date of judicial demand or from such earlier date when the claim became ascertainable and due.[4] A claim for repayment of a loan is a contract.
In the instant case, the parties did not agree on a date that the entire sum would be due, only that Ms. Wheat would pay Mr. Kraus $100.00 per month until the entire debt was extinguished. Therefore, we do not find that the trial court erred by awarding interest from the date of judicial demand, 16 May 2000. We note that at the rate of $100.00 per month, it would have taken Ms. Wheat in excess of thirteen years to repay the money. This assignment is meritless.
| T1 Finally, Ms. Wheat contends that the trial court erred in not allowing credit for the virile share of her husband against whom judgment was entered on 13 December 2001. That judgment provided that the house would be returned to Mr. Kraus, but that Ms. Wheat would keep the money. Only Ms. Wheat was granted a new trial on all issues. Consequently, the judgment against Mr. Wheat is final.
Although the pleadings name Mr. Wheat as a party defendant, the testimony establishes that Mr. Wheat was unaware of the loan made to his wife by Mr. Kraus. In addition, and more importantly, Mr. Wheat has a judgment in his favor on this issue. Thus, as between Mr. Wheat and Mr. Kraus, the matter is resolved and Ms. Wheat is not entitled to a credit. Consequently, this issue is without merit.
For the reasons above, we affirm the judgment of the trial court. All costs of this appeal are assessed against Ms. Wheat.

AFFIRMED; PEREMPTORY EXCEPTION OF PRESCRIPTION OVERRULED.

. Suit was originally filed against Ms. Wheat and her husband, Searcy E. Wheat. On 13 December 2001, a judgment was entered against both defendants, as the result of a settlement agreement by the parties. Ms. Wheat moved for new trial on the basis that her consent was compromised due to medications that she was taking; the motion was granted and the judgment was set aside only as to her. Mr. Wheat did not appeal from the 13 December 2001 judgment; thus it is final as to him only. This opinion concerns only the judgment of 4 September 2002 entered against Ms. Wheat. Further, we note that Mr. Wheat did not testify in the 3 June 2002 trial

. The trial court relied on the testimony that once Mr. Kraus learned that he had donated his immovable property to Ms. Wheat and confronted her, she threatened to put him out of his home.

. As noted in footnote 1 above, Mr. Wheat did not testify at the trial.

. See also La. C.C. art. 2000: "In a contract action, when the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due.”