lkirby, J.
Sandra Tanner, Orey Tanner, Jr. and Joan Martin appeal the trial court judgment dismissing with prejudice their petition seeking to annul the testamentary bequest of Clifford C. Tanner in favor of Jerald N. Andry. We affirm for reasons that follow.
The undisputed facts and procedural history of this case were set forth in this Court’s earlier opinion in In re Successions of Tanner, 2002-1570 (La.App. 4 Cir. 2/5/03), 836 So.2d 1280, writ granted, judgment reversed, 2003-0866 (La.6/20/03), 847 So.2d 1233, as follows:
Clifford Chester Tanner died testate on April 25, 2001; his last will and testament was dated April 12, 2001. His wife, Elise Joynes Tanner, pre-deceased him and died intestate. There were no children born of their marriage. In Mr. Tanner’s last will and testament he bequeathed the following: His furniture and personal belongings to the Volunteers of America; an undivided one-half (1/2) interest in his estate, free of all taxes and administrative charges, to Jerald N. Andry; one-eighth (1/8) interest in his estate, free and clear of all taxes and charges, to Sandra Tanner and Orey Tanner, Jr.; one-eighth (1/8) interest to the Theodore Roosevelt Lodge, # 415, Free and Accepted Masons; one-eighth (1/8) of his estate to the Encircler Chapter, # 191, Order of Eastern Star; and the remaining one-eighth (1/8) of his estate to Mrs. Joan Martin.
*586 |2On May 17, 2001, a succession proceeding was filed. The last will and testament of Clifford Chester Tanner was probated and letters testamentary were issued to Jerald N. Andry as executor of the succession. On August 9, 2001, the appellants, the only living relatives of the decedent, who are also particular legatees under Clifford Tanner’s will, filed a petition to nullify testamentary bequest [to Jerald Andry.] On November 2, 2001, the appellants amended their petition allegations to state that Jerald N. Andry violated the Louisiana Bar Association Rules of Professional Conduct, Rule 1.8(c), by preparing a testament for a non-relative in which he received a substantial gift. On April 9, 2002, Jerald N. Andry filed a motion for summary judgment requesting that appellants’ petition be dismissed with prejudice. The matter was heard on May 24, 2002. On June 11, 2002, the trial court signed the judgment granting the appellee’s motion for summary judgment and dismissed the appellants’ petition to nullify testamentary bequest.
This Court affirmed the trial court judgment granting summary judgment in favor of Jerald Andry, but the Louisiana Supreme Court granted writs, reversed the judgments of the lower courts and remanded the casé to the trial court for further proceedings after finding that genuine issues of material fact existed. In re Successions of Tanner, 2003-0866 (La.6/20/03), 847 So.2d 1233.
On remand, a trial on the merits was held on February 4, 2004. The evidence at trial consisted of documentary, evidence and the testimony of Morris H. Hyman.
Mr. Hyman, a lawyer, testified that he and Jerald Andry, also a lawyer, work in the same office building, but are not professionally affiliated with each other. On April 12, 2001, Mr. Andry asked Mr. Hy-man if he could prepare a will for Clifford Tanner, who was in the hospital at the time. Mr. Andry said he could not prepare the will himself because he was going to receive a bequest in the will. Mr. An-dry gave Mr. Hyman a copy of Mr. Tanner’s 1997 will, in which Mr. Andry |3was named as an executor of the estate, but not a legatee. Mr. Andry advised Mr. Hyman that Mr. Tanner wanted to make changes to the 1997 will. Those changes included eliminating bequests to certain Masonic organizations, and substituting a bequest to Mr. Andry of one-half of Mr. Tanner’s estate, a bequest valued in excess of $500,000.00.
Mr. Hyman prepared and personally typed the new will dated April 12, 2001. Without input from Mr. Andry or anyone else, Mr. Hyman decided to add a universal legatee provision. He met Mr. Tanner in his hospital room later that day, and brought the will he prepared with him. Also present in the hospital room were Jerald Andry and his brother and sister-in-law, Gilbert and Newell Andry. Jerald Andry introduced Mr. Hyman to Mr. Tanner, and told Mr. Tanner that Mr. Hyman was the lawyer to whom he had spoken about preparing a will for Mr. Tanner.
Mr. Hyman then spoke to Mr. Tanner for approximately ten minutes about the will and other topics. He testified that he had sufficient opportunity to assess Mr. Tanner’s competence during their conversation, and he determined that despite Mr. Tanner’s advanced age and illness, he was lucid and competent to execute a will. He explained to Mr. Tanner the changes he made to the previous will, and he also explained his reasons for including a universal legatee provision and the effect that this provision would have on the will. He told Mr. Tanner at the beginning of their conversation about the will to stop him if he wanted to make any changes. He said *587 he assured Mr. Tanner that it would be “no big deal” to redo the will if Mr. Tanner had changes. He said Mr. Tanner said he understood that, and Mr. Hyman then read the will aloud to Mr. Tanner with Gilbert and Newell Andry present as witnesses at Mr. Hyman’s request.
| ¿Mr. Hyman testified that as a result of his conversation with Mr. Tanner, he formed the opinion that the will he prepared expressed the true and actual intentions of Mr. Tanner at the time. After he finished reading the will aloud to Mr. Tanner, he asked Mr. Tanner if there were any changes he wanted to make, and Mr. Tanner said, “No.” When he asked Mr. Tanner if the will was his last will and testament, he replied, “Yes.” Mr. Tanner then signed the will.
Mr. Hyman testified that he is the lawyer for the estate of Mr. Tanner. Mr. Andry was named as executor of Mr. Tanner’s estate in both the 1997 and 2001 wills.
The deposition of Jerald Andry was one of the exhibits introduced jointly by the parties. In that deposition, Mr. Andry stated that he was named executor of Mr. Tanner’s estate in his 1997 will. Mr. An-dry had met and gotten to know Mr. Tanner through a mutual good friend, Fred Siegel, now deceased. During Mr. Tanner’s hospitalization for his final illness, Mr. Andry visited him and took care of personal business for him. He never considered himself to be Mr. Tanner’s lawyer. During Mr. Tanner’s hospitalization, Mr. Andry and Mr. Tanner discussed how Mr. Tanner wanted his estate distributed. In one of those discussions, Mr. Tanner told Mr. Andry that he wanted to name him as a beneficiary in his will instead of certain Masonic organizations. He also told him other changes he wanted to make to the 1997 will. He said he wanted to keep Mr. Andry as executor of the new will.
Mr. Andry said they discussed the consequences of Mr. Tanner leaving part of his estate to him. Mr. Andry told Mr. Tanner that changing his will to include Mr. Andry was going to make a lot of people very unhappy. Mr. Tanner’s response was, “You let me worry about that.”
|sMr. Andry went back to his office that day, April 12, 2001, and asked Morris Hy-man to prepare a new will for Mr. Tanner based on the changes that Mr. Tanner had indicated to Mr. Andry that he wanted to make. He said he told Mr. Hyman he could not prepare the new will himself because he was going to be named in the will. Mr. Andry’s deposition testimony as to the rest of the day’s events corroborates Mr. Hyman’s trial testimony'.
The trial court rendered judgment in favor of Mr. Andry, dismissing with prejudice appellants’ petition seeking to annul the testamentary bequest of Clifford C. Tanner in favor of Mr. Andry. In comments made from the bench, the trial court noted that there was no evidence in the record that Mr. Andry had any input into Mr. Tanner’s decision to make a bequest to him. ■ The court found that Mr. Andry did not personally prepare the will, but rather left that task to Mr. Hyman. Although making comments about the bequest at issue including, “it doesn’t look good” and “I am not saying that it doesn’t look fishy,” the trial court nonetheless found that there was no evidence in the record supporting the appellants’ claim that the changes included in Mr. Tanner’s 2001 will were the result of undue influence by Mr. Andry. The court noted that the evidence was undisputed that Mr. Tanner was. lucid and competent at the time the 2001 will was executed. The court found that Mr. Hyman sufficiently consulted with Mr. Tanner prior to the signing of the will. Finding no evidence to support *588 altering the terms of the 2001 will, the trial court rejected appellants’ request to annul the bequest to Mr. Andry.
In this appeal, appellants list twelve assignments of error, all relating to findings of fact stated by the trial court in its oral reasons for judgment given at the conclusion of trial. We first note that reasons for judgment are not controlling, and form no part of trial court judgments from which appeals are taken. Homes v. |6Long, 2002-0950, p. 3 (La.App. 4 Cir. 12/18/02), 835 So.2d 877, 878-879. Having said that, we turn to the propriety of the trial court judgment, considering the four issues presented for review by appellants.
Their first argument relates to the Louisiana Supreme Court’s reversal of this Court’s affirmation of the trial court’s granting of summary judgment in favor of Mr. Andry. Appellants argue that by stating that genuine issues of material fact exist, the Supreme Court was essentially telling the trial court that there exists factual support sufficient to rule in appellants’ favor. We find no merit in this argument.
A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Hines v. Garrett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765, citing Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. (emphasis ours). A genuine issue is one as to which reasonable persons could disagree. Id. Finding that genuine issues of material fact exist is not a finding that the trial court must rule in favor of the party opposing a motion for summary judgment. We interpret the Supreme Court’s ruling to mean that summary judgment was not appropriate because the court determined that there were genuine issues of fact remaining, i.e. “triable issues.” See, Smith v. Our Lady of the Lake Hospital, Inc., supra. Plaintiffs still had the burden of proving their case at the trial on remand. The Supreme Court’s reversal of summary judgment in favor of the defendant did not relieve the plaintiffs of that burden.
Plaintiffs next argue that Mr. An-dry violated Rule 1.8(c) of the Louisiana State Bar Association Rules of Professional Conduct, and that Mr. Tanner’s bequest to him should be nullified for that reason. Rule 1.8(c) states as follows:
17A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
 The purpose of Rule 1.8(c) is to ensure that the testator has the advice of an independent lawyer prior to making a substantial gift. In re Grevemberg, 2002-2721 (La.2/25/03), 838 So.2d 1283. Appellants correctly state that the Louisiana Rules of Professional Conduct have the force and effect of substantive law. In re Succession of Parham, 98-1660 (La.App. 1 Cir. 9/24/99), 755 So.2d 265, citing Succession of Wallace, 574 So.2d 348 (La.1991).
The evidence in this case does not support appellants’ claims that Mr. Andry prepared Mr. Tanner’s 2001 will, or exerted undue influence over Mr. Tanner. Even though Mr. Andry asked Mr. Hyman to prepare the will, informed him of Mr. Tanner’s desired changes to his previous will and accompanied Mr. Hyman to the hospital when he brought the will to Mr. Tanner for his signature, Mr. Andry did not prepare the will himself. Mr. Andry’s relaying of Mr. Tanner’s wishes to Mr. Hyman did not constitute preparation of the will. Furthermore, Mr. Andry’s depo *589 sition testimony that the bequest to him was solely Mr. Tanner’s idea is uncontro-verted.
Mr. Hyman drafted the 2001 will, and then went to the hospital where he had a conversation with Mr. Tanner in which they discussed the changes made to the will. Mr. Hyman read the newly drafted will aloud to Mr. Tanner, and made it clear to him that if he was not satisfied with the will as it was drafted by Mr. Hyman, changes could easily be made. Mr. Tanner declined his offer to make changes. Mr. Hyman testified that the conversation he had with Mr. Tanner |ssatisfied him that the terms of the new will accurately reflected Mr. Tanner’s wishes.[1]
The evidence established that Mr. Andry did not prepare the will. Furthermore, he ensured that Mr. Tanner had the benefit of the independent counsel of Mr. Hyman prior to making the changes to his will, including the substantial bequest to Mr. Andry. Accordingly, we conclude that Mr. Andry did not violate Rule 1.8(c) of the Louisiana State Bar Association Rules of Professional Conduct.
The trial court evaluated Mr. Hyman’s testimony and the documentary evidence presented by both parties, and concluded that appellants did not prove that grounds existed to support their request that Mr. Tanner’s testamentary bequest to Mr. An-dry be annulled. The record supports that conclusion. We find no manifest error in the trial court judgment.
For the reasons stated above, we affirm the trial court judgment.
AFFIRMED.

. It is undisputed that Mr. Tanner had sufficient mental capacity to execute a valid will on the date the will at issue was executed.